## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

WILLIE B. MARTIN,                        )
                                         )
                    Plaintiff,           )
vs.                                      )          Case No. CIV-11-0899-HE
                                         )
DUNCAN BIT SERVICES INC.                 )
                                         )
                    Defendant.           )

## ORDER

Plaintiff Willie Martin claims defendant Duncan Bit Services, Inc. ("DBS")

terminated him because of his race and age in violation of 42 U.S.C. § 1981 and Oklahoma

public policy.[1]  Defendant has filed a motion for summary judgment on all claims.  The court

concludes the motion should be granted in part and denied in part.

### Background[2]

Plaintiff is an African American male who was employed by defendant as a general

shop laborer from July 11, 2007 until his employment with defendant ended on December

11, 2009, at which time plaintiff was sixty years old.  Defendant supplies new, rerun, and

rebuilt bits to the mining, water well, and oil and gas industries.  Joseph Davis, Jr., ("Davis")

became the defendant's owner and principal decision-maker in July 2008.  Plaintiff claims

---

[1]*Plaintiff's complaint also alleges violations of Title VII and the Age Discrimination in Employment Act (ADEA), but plaintiff now concedes that DBS does not fall within the purview of those acts because it employed fewer than fifteen employees during the year of plaintiff's separation.  See generally 42 U.S.C. § 2000e(b) (Title VII only applies to employers of 15 or more employees); 29 U.S.C. § 630(b) (ADEA only applies to employers of 20 or more employees).  Therefore, defendant's motion for summary judgment is granted as to plaintiff's Title VII and ADEA claims.*

[2]*The following factual summary is presented in the light most favorable to the plaintiff.*

Davis terminated his employment because of his race and age following an altercation on December 11, 2009. Defendant denies this allegation and maintains that plaintiff voluntarily quit on that date. Alternatively, defendant contends that if it is found to have terminated the plaintiff, it did so because of plaintiff's poor job performance and not because of his race or age.

Before Davis became defendant's principal decision-maker, plaintiff worked mostly inside the shop as a helper. At least one of his job duties involved operating a cutting torch. Additionally, plaintiff went on "road trips" to pick up drill bits. After Davis took over, plaintiff was given additional job duties. Those additional job duties were to wash large drill bits outdoors, "pop buttons" off of those drill bits, and to operate an automatic hammer. Additionally, plaintiff was no longer allowed to go on road trips. Plaintiff testified in his deposition that his new job duties were more physically demanding than what he was required to do before Davis's tenure.

During a conversation in February or March 2009 about plaintiff potentially switching to a part-time position, Davis allegedly told the plaintiff that he was "a high risk to the company" because of his race and age.[3] Additionally, according to plaintiff, Davis and another of defendant's employees used racial slurs when talking about black persons in the

---

[3]*According to Mr. Davis, this conversation was in the context of him explaining to plaintiff that plaintiff's insurance premiums were higher than those of other employees because statistics showed that older black males had a higher risk of suffering a heart attack.*

plaintiff's presence, though the comments were not directed at the plaintiff personally.[4] Plaintiff has also presented evidence that younger, white employees were allowed to take breaks and use their cell phones but that Davis yelled and cursed at plaintiff for doing the same.[5]  Further, plaintiff testified in his deposition that Davis made statements to him on a couple of occasions to the effect that plaintiff could not "do what the others do" because plaintiff was about 60 years old.  And, plaintiff was allegedly told by another DBS employee that he should start looking for another job because Davis does not like black people.[6]

DBS maintains that if plaintiff was fired, it was because of his poor job performance. According to defendant, plaintiff repeatedly failed to replace acetylene bottles on the cutting torch when their pressure fell below 50 pounds per square inch and he repeatedly failed to maintain adequate fluid levels in the hydraulic hammer.  Additionally, defendant contends that plaintiff's productivity was unacceptably low and that he took excessive breaks and talked on his cell phone during work hours in violation of company policy.  It is undisputed that plaintiff was verbally reprimanded multiple times for these performance issues but was never formally disciplined.

---

[4]*It is unclear how often this happened or in what time frame, though these alleged incidents occurred while the plaintiff was at work.*

[5]*Defendant implemented a cell phone policy on November 24, 2009 which required all hourly employees to leave their cell phones in their vehicles and use them only during authorized breaks.  This policy was allegedly implemented because of the plaintiff's excessive cell phone use.  Plaintiff testified in his deposition that he initially complied with the policy but stopped doing so when he saw that other employees were not.  See Martin Deposition at 45 [Doc. #55-1].*

[6]*Though not explicitly objected to by defendant, this statement appears to be inadmissible hearsay.*

On December 11, 2009, Davis and the plaintiff engaged in a heated discussion concerning plaintiff's job performance.   At the conclusion of this altercation, plaintiff contends that Davis told him to leave and that he was fired.   Defendant maintains that Davis did not terminate plaintiff and that plaintiff instead walked off the job and resigned.   At the time, plaintiff was the only African American employed by DBS and was one of defendant's two oldest employees.  After plaintiff's separation from defendant, a younger white male was hired to fill plaintiff's position.[7]  Since taking over the day-to-day operations of DBS, Davis has hired seven new employees, none of whom are black.

## Discussion

Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party who bears the burden of proof at trial on a claim or defense must be able to point to sufficient evidence to support each essential element of the claim or defense in order to avoid summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c)(1)(B).  All inferences from the evidence are to be viewed in the light most favorable to the non-moving party.  Jaramillo v. Adams County Sch. Dist. 14, 680 F.3d 1267, 1268-69 (10th Cir. 2012).

### A. 42 U.S.C. § 1981

---

[7]It is not clear who exactly performed plaintiff's former job duties.  A younger white male was  hired approximately five days after plaintiff's alleged termination and he "floated around" among job duties, apparently performing some of plaintiff's former job duties.  See Sullaway Deposition at 16, 24 [Doc. #55-6]. And three other younger white males already employed by DBS performed other of those job duties after plaintiff's separation.  See id. at 15-16.

Wrongful termination claims under 42 U.S.C. § 1981 are analyzed under the same standards as similar claims under Title VII. Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194 (10th Cir. 2011). A plaintiff can prove discrimination by direct evidence or by utilizing the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Crowe, 649 F.3d at 1194. The parties here discuss only the McDonnell Douglas framework. Under that familiar framework, the plaintiff must first make out a prima facie case of discrimination. If he does so, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's alleged termination. Once the defendant has satisfied this burden of production, the plaintiff must produce evidence that defendant's proffered explanation for its actions is mere pretext for intentional discrimination. *See* Crowe, 649 F.3d at 1195.

To make out a prima facie case of wrongful termination on the basis of race, the plaintiff must prove that: 1) he is a member of a protected class; 2) he was qualified for the position he held with defendant; and 3) he was terminated under circumstances which give rise to an inference of intentional discrimination. *See* Plotke v. White, 405 F.3d 1092, 1099-1102 (10th Cir. 2005); Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005). In this case, it is undisputed that plaintiff is a member of a protected class and there is evidence that he was qualified for his position as a general shop laborer.[8] Moreover, although defendant maintains

_____

[8]*In its present submissions, defendant argues that plaintiff was not qualified to perform his job merely because he was performing the job poorly. However, defendant has previously admitted that plaintiff was qualified to perform the duties of a general shop laborer at the time of his separation. See Defendant's Admission Nos. 4-7 [Doc. #55-10].*

that plaintiff quit his job, DBS does not contest for purposes of the present motion that plaintiff has some evidence from which a jury might conclude that he was terminated.  And since plaintiff was replaced by a non-black employee, his alleged termination occurred under circumstances which give rise to an inference of intentional discrimination.  Thus, plaintiff has presented sufficient evidence to make out a prima facie case of race discrimination. Defendant's proffered justification for plaintiff's alleged termination is that plaintiff's job performance was poor and that he violated the company's cell phone policy.  Thus, the burden shifts back to the plaintiff to offer evidence that DBS's proffered explanation is pretext for intentional discrimination.

Plaintiff's evidence of pretext is thin.  His own conclusory statements that Mr. Davis disliked him to due his race or age, unsupported by any facts, instances or examples beyond plaintiff's own assumptions, prove little.  Further, plaintiff's reliance on the doctrine of judicial estoppel smacks more of desperation than a real basis for arguing pretext.  The evidence does not suggest that defendant has changed its position in the sense contemplated by the doctrine.  It appears to argue now, as it did in the OESC proceeding, that plaintiff quit and plaintiff's own testimony would arguably support an inference to that effect.[9]  But, as plaintiff continues to argue here that he was fired, defendant further argues that if the jury

---

[9]*Plaintiff's own description of the argument with Davis was that, with both of them making ample use of the "F word," Davis told him he was not doing his job, and that he, plaintiff, said, "Well, you need to do something about it cause I'm tired of you coming out here and jumping all over me, cursing."  According to plaintiff, Davis then said, "Well, just leave." One permissible inference is that Davis invited his own termination, which perhaps qualifies as a resignation.*

accepts plaintiff's view that he was fired, then it had reason to do so.  The positions do not support application of some judicial estoppel theory.

Nonetheless, the court concludes that plaintiff has presented sufficient evidence of pretext.  Plaintiff has offered evidence that Davis used or allowed use of the word "nigger" on the job,[10] though the words were not directed at him.  He has offered evidence that, several months prior to his alleged termination, Mr. Davis discussed the increased insurance costs supposedly attributable to plaintiff as an African American of his age.  He offered some evidence that other white employees were not disciplined or supervised in the same way as to their cell phone usage or break time.  Further, there is evidence that all seven of Mr. Davis' hires were of white employees and that white employees replaced him or took over his duties.  Considered cumulatively, the court concludes plaintiff has made a sufficient showing—barely—of pretext sufficient to send his §1981 claim to the jury.

## B.  State law claims

Prior to the Oklahoma Anti-Discrimination Act's becoming the exclusive remedy for status-based discrimination claims under Oklahoma law,[11] the Oklahoma courts had

---

[10]*Plaintiff's testimony was unspecific as to the exact number of times or the circumstances in which he overheard the word being used.*

[11]*The Oklahoma Anti-Discrimination Act became the exclusive remedy for status-based discrimination claims under Oklahoma law on November 1, 2011.  See generally 25 Okla. Stat. 1101(A) (2011).  However, the parties agree the previous version of the OADA is implicated here.*

recognized a Burk[12] tort claim for employees who were unlawfully discharged on the basis of their race or age.  *See* Kruchowski v. Weyerhaeuser Co., 202 P.3d 144, 154 (Okla. 2008) (age); Tate v. Browning-Ferris, Inc., 833 P.2d 1218, 1225 (Okla. 1992) (race).  In addition to its contention that plaintiff has not presented sufficient evidence from which a jury could find that Davis intentionally discriminated against the plaintiff, defendant argues that plaintiff's state-law claims are barred because plaintiff did not file a complaint with the Oklahoma Human Rights Commission within 180 days after his alleged termination. Defendant relies on 25 Okla. Stat. § 1502(A) (2001), which states in relevant part:

> A person claiming to be aggrieved by a discriminatory practice . . . may file with the Commission a written sworn complaint stating that a discriminatory practice has been committed, and setting forth the facts upon which the complaint is based, and setting forth facts sufficient to enable the Commission to identify the person charge . . . The complaint must be filed within one hundred eighty (180) days after the alleged discriminatory practice occurs.

Filing a complaint under this section has been held to be a prerequisite to pursuing a Burk tort against an employer who falls within the OADA.  Atkinson v. Halliburton Co., 905 P.2d 772, 774-77 (Okla. 1995) (holding that exhaustion of administrative remedies under the OADA is a prerequisite to filing a lawsuit for handicap discrimination); Forcum v. Via Christi Health Sys., Inc., 137 P.3d 1250, 1253 (Okla. Civ. App. 2006) (extending this holding to age discrimination claims).  However, the court is aware of  no authority applying that prerequisite to a plaintiff bringing claims against an employer who falls outside the OADA's

---

[12]*Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989) (creating an exception to Oklahoma's at-will employment rule when an employee is discharged "contrary to a clear mandate of public policy").*

purview.  Considering the structure of the statute as a whole, the purpose of § 1502(A) appears to have been to allow the OHRC to investigate claims of discrimination.  At the times pertinent here, the OHRC was only authorized to investigate and take action against employers who had fifteen employees or more.  *See* 25 Okla. Stat. §§ 1301(1), 1501(A)(3) (2001).  It is undisputed that DBS had fewer than fifteen employees in 2009 and thus fell outside the scope of the OADA.  As a result, plaintiff's failure to file a complaint with the OHRC within 180 days of his termination does not bar his claims.[13]

Having concluded that plaintiff's state law claims are not barred by his failure to file a complaint with the OHRC, the court turns to the merits.  For the reasons discussed above with respect to the federal claim under 42 U.S.C. § 1981, plaintiff has presented sufficient evidence from which a jury could conclude that he was terminated on the basis of his race in violation of Oklahoma public policy.  His age discrimination claim, however, requires further discussion.

The only difference in proof between a claim for unlawful discharge on the basis of age under Oklahoma public policy and a similar claim under the ADEA is that the Oklahoma claim requires plaintiff to prove only that his age was a "significant factor" in the employer's termination decision, as opposed to the but-for cause.  *See generally* Medlock v. United Parcel Serv., Inc., 608 F.3d 1185, 1197-98 (10th Cir. 2010).  Thus, plaintiff can use the same

---

[13]*After November 1, 2011, however, filing a complaint with the OHRC or EEOC within 180 days is a statutory prerequisite to filing an employment discrimination lawsuit under the OADA, regardless of the employer's size.  See 25 Okla. Stat. §§ 1301(1)(a), 1350(B) (2011).*

burden-shifting framework discussed above to show that Davis had an unlawful motive when he allegedly terminated plaintiff's employment.  *See, e.g.,* Simmons v. Sykes Enters., Inc., 647 F.3d 943, 947-48 (10th Cir. 2011) (evaluating an ADEA claim under the McDonnell-Douglas framework).

In this case, it is undisputed that plaintiff was over the age of 40 and has presented sufficient evidence from which a jury could conclude that defendant terminated his employment.  Additionally, plaintiff has presented evidence that he was replaced by a younger worker and he has, therefore, made out a prima facie case of age discrimination.  As discussed above, the defendant has provided a legitimate, non-discriminatory reason for allegedly terminating plaintiff, so the plaintiff has the burden of proving this proffered explanation is pretext for intentional discrimination on the basis of his age.  The court views this as an even closer call than race discrimination claim because Davis's alleged ageist comments are not as probative of unlawful animus as his alleged racial comments.  Nevertheless, for substantially the same reasons as discussed above,[14] the court concludes that plaintiff has presented a triable issue with respect to his claim for unlawful termination on the basis of his age.

Defendant's motion for summary judgment [Doc. #54] is **GRANTED** as to plaintiff's claims under Title VII and the ADEA but is otherwise **DENIED**.

---

[14]*The comparators discussed above were younger than plaintiff.*

10

**IT IS SO ORDERED**.

Dated this 24th day of August, 2012.

JOE HEATON
UNITED STATES DISTRICT JUDGE